# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:07CV186-C

| | |
|---|---|
| U.S. SOUTH COMMUNICATIONS, INC. d/b/a INCOMM,<br><br>    Plaintiff,<br><br>vs.<br><br>NORTHERN TELECOM, INC. a/k/a NORTEL NETWORKS INC.,<br><br>    Defendant. | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's "Motion to Remand" (document #8) and its "Memorandum in Support . . ." (document #8-2), both filed May 17, 2007. The Defendant filed its "Response . . ." (document #13) May 29, 2007. On June 5, 2007, the Plaintiff filed its "Reply . . ." (document #19). The Defendant then filed a ". . . Sur-Reply in Opposition . . ." (document #22) June 8, 2007.

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and the subject Motion is now ripe for determination.

Upon examination of the Plaintiff's Motion, the parties' briefs, and the pleadings, it is apparent that there is no basis for federal subject matter jurisdiction and, accordingly, this matter will be <u>remanded</u> to state court, as discussed below.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On April 23, 2007, the Plaintiff filed the subject action in the Superior Court of Mecklenburg County alleging claims under North Carolina law for unfair and deceptive trade practices, breach of

contract, unfair competition, breach of the duty of good faith and fair dealing, and seeking a declaratory judgment that it does not owe additional fees under the parties' contract.

The Plaintiff is a wholesaler of long-distance communication services. The Defendant designs, develops, manufactures, and sells network and telecommunication products and services, and licenses software it develops for use in operating hardware manufactured by or for it. On July 1, 1996, the parties entered into a "Network Product Purchase Agreement" ("1996 Agreement"), in which the Plaintiff purchased a DMS-500 telecommunications switching system (the "switch")[1] from the Defendant. Attached to the 1996 Agreement were the following two provisions which the Defendant contends limit the Plaintiff's right to use the software associated with the switch: (1) that the Plaintiff shall "not reproduce, copy, or modify the Software in whole or in part except as authorized" by the Defendant, and (2) that the Plaintiff shall only use the software in conjunction with its "use of the Equipment [Hardware] with respect to which such Software was furnished."[2]

On September 22, 1999, the parties entered into a "Master Purchase Agreement" ("1999 Agreement"). The 1999 Agreement, which is still in effect, set forth the terms for the purchase of future products or services from the Defendant and licensed the Plaintiff to use the Defendant's software in operating its switch. Relevant to this action, the MPA contains the following provisions for the use of "Non-Licensed Software":

> 10.8 Certain Software delivered by Nortel may include Non-Licensed Software. Non-Licensed Software includes (i) any Software for which the applicable

---

[1] A switch is a networking device that processes long-distance calls.

[2] The Defendant contends that these Attachments "survived the termination" of the 1996 Agreement. In addition, the Defendant urges the Court that these provisions should be considered in spite of the fact that the Plaintiff did not attach them to its Complaint. The undersigned has considered these provisions in the interest of a full review of jurisdiction – but, as discussed herein, they do not change the character of the underlying state law allegations of the Complaint.

right to use fees have not been paid; and (ii) Software for which a periodic right to use fee has expired and the applicable additional periodic right to use fees have not been paid. Company shall submit to Nortel an Order for any Non-Licensed Software that Company desires to license or renew.

10.9 When Non-Licensed Software is placed into service, the applicable right to use fees shall be payable. Company shall also have the option to pay the applicable right to use fees for any Non-Licensed Software upon installation of a Software load containing such Non-Licensed Software.

10.10 To ensure Company's proper activation and/or usage of only the appropriate Software, Company shall complete the appropriate form designated by Nortel prior to the activation and/or usage by Company of any Non-Licensed Software. Company shall identify all Software desired to be activated and/or used (including the number of lines or other units activated, if applicable) in each System and shall transmit such form to Nortel.

10.11 Nortel shall promptly review any form submitted pursuant to Section 10.10 and respond in writing, identifying whether (i) any applicable prerequisite Hardware or Software is required by Company prior to activation and/or usage of the applicable Software; or (ii) whether the use of such Software requires Nortel to determine whether the current System configuration will require additional elements, such as Hardware, other hardware and/or System memory, prior to activation and/or usage; or (iii) whether Company can use such Software without the addition of any additional Hardware or Software.

10.12 Nortel reserves the right to access by remote polling any site in which Software has been installed to determine which Software has been activated. Such polling shall be done so as not to unreasonably interfere with Company's use of the Products.

10.13 Nortel shall issue invoices to Company, in addition to those amounts previously invoiced, for amounts found to be payable as a result of Company's activation and/or usage of any Software which Nortel determines as a result of the remote polling of a site and for which Company has not previously paid the appropriate right to use fees.

10.14 The warranty period for Software activated later than the original Ship Date of the Software load shall be for the same period as such original Software load and shall not be extended to provide for an additional period of warranty based upon the date individual features or units are activated and/or utilized by Company or the date Company pays any applicable right to use fees.

From the signing of the 1996 Agreement, the parties' relationship continued for approximately ten years without major incident. During that time, the Plaintiff purchased some Nortel brand "peripheral hardware," from the Defendant and also from third parties, which had the effect of expanding the switch's capacity to support a larger number of telephone lines. Upon learning of the additional capacity, the Defendant, apparently "in the guise of an agreed-upon system upgrade," installed a disabling patch which limited the switch's capacity. In the ten years prior to the installation of the disabling patch there had been no capacity limitation. Shortly thereafter the Defendant issued an invoice to the Plaintiff for $2,074,464.00 relating to software right-to-use fees for the seven Nortel peripheral devices which the Plaintiff purchased from third parties.

The use of the third-party-purchased peripheral Nortel hardware is at the center of the dispute. The Plaintiff alleges that the 1999 Agreement licensed it to use the switch software to support its use of the peripheral hardware. In sharp contrast, the Defendant claims this amounts to non-licensed use of their software and that the Plaintiff owes it $2,074,464.00 in right-to-use fees. Relevant to its decision to remove this action to this Court, the Defendant also asserts that use of this software constitutes an infringement on its intellectual property rights (the Defendant states that it holds a valid copyright for the subject software and the Plaintiff does not contest this fact). The Plaintiff disagrees, arguing this is nothing more than a breach of contract action.

On May 3, 2007, the Defendant removed the state law action to the Western District of North Carolina, contending the following as a basis for federal jurisdiction:

a. Plaintiff's requests for declaratory judgments represent an assertion that Plaintiff is not infringing on Defendant's copyright rights under federal law;

b. Plaintiffs' requests for declaratory judgments are preempted and/or completely preempted by federal copyright law;

    c.        Plaintiff seeks, in essence, to assert defenses or counterclaims to an impending or threatened copyright infringement action under federal law; or

    d.        Plaintiff claims and requests a declaratory judgment that Defendant has granted Plaintiff an implied license over copyrighted software under federal copyright law.

The Plaintiff filed its timely "Motion to Remand," and as set forth above, the Motion has been fully briefed and is ripe for disposition.

## II. DISCUSSION

28 U.S.C. § 1441(a) provides:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

The existence of subject matter jurisdiction is a threshold issue, and absent a proper basis for subject matter jurisdiction, a removed case must be remanded to state court. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 96 (1998). Accord Jones v. American Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999); and Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). The party seeking federal jurisdiction, in this case, the Defendant, has the burden of proving that subject matter jurisdiction exists. See Lovern v. Edwards, 190 F.3d 648, 654 (4th Cir. 1999); Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991); and Norfolk Southern Ry. Co. v. Energy Development Corp., 312 F.Supp.2d 833, 835 (S.D.W.Va. 2004).

It is well-established that "[t]he subject matter jurisdiction of federal courts is limited and the federal courts may exercise only that jurisdiction which Congress has prescribed." Chris v.

Tenet, 221 F.3d 648, 655 (4th Cir. 2000), citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Accord Darcangelo v. Verizon Communications, Inc., 292 F.3d 181, 186 (4th Cir. 2002) ("In general, an action filed in state court may be removed to federal court only if it might have been brought in federal court originally").

Accordingly, at the time it filed its Notice of Removal, the Defendant had the burden of establishing the existence of subject matter jurisdiction, that is, the existence of either of what are commonly called "federal question" or "diversity" jurisdiction. Accord Lovern, 190 F.3d at 654; Richmond, Fredericksburg & Potomac R. Co., 945 F.2d at 768; and Energy Development Corp., 312 F.Supp.2d at 835. The Defendant has not asserted diversity jurisdiction as a basis for removal.[3] Thus, the issue is whether the Defendant can satisfy its burden of establishing federal question jurisdiction.

Concerning federal question jurisdiction, as the Fourth Circuit has stated:

Title 28 U.S.C. § 1331 provides that district courts have subject matter jurisdiction of every civil action that "arises under the Constitution, laws, or treaties of the United States." This means that Congress has given the lower federal courts jurisdiction to hear only those cases in which a well-pleaded complaint establishes <u>either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law</u>.

Battle v. Seibels Bruce Ins. Co., 288 F.3d 596, 606-07 (4th Cir. 2002) (emphasis added).

Moreover, "the vast majority of cases brought under the general federal question jurisdiction

---

[3]The Plaintiff asserts that the Defendant could not remove this action on the basis of diversity because its principal place of business is in North Carolina. See 28 U.S.C. § 1441(b) (an action based on diversity shall only be removable "if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought"); and 28 U.S.C. § 1332(c)(1) ("a corporation shall be deemed to be a citizen of any State . . . where it has its principal place of business").

However, in the Defendant's "Response . . ." it states that it is organized under Delaware law and its principal place of business is in Richardson, Texas. It appears that the location of the Defendant's principal place of business is immaterial to a diversity jurisdiction determination, because both parties are incorporated under the laws of Delaware. See 28 U.S.C. § 1332(a)(1) ("district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different states"), and (c)(1) ("a corporation shall be deemed to be a citizen of any State by which it has been incorporated").

6

of the federal courts are those in which federal law creates the cause of action [and t]he well-pleaded complaint rule requires that federal question jurisdiction not exist unless a federal question appears on the face of a plaintiff's properly pleaded complaint." Columbia Gas Transmission Corp. v. Drain, 237 F.3d 366, 369-70 (4th Cir. 2001), citing Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 808 (1986). See also Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc., 535 U.S. 826, 830-32 (2002) (well-pleaded complaint rule does not allow a defendant's defenses or counterclaims to serve as the basis for a district court's "arising under" jurisdiction). A review of the Plaintiff's Complaint shows only state law claims, revolving primarily around the underlying alleged breach of contract. There is no federal question presented in the Plaintiff's Complaint.

However, the Defendant argues that even if the Court finds that the Complaint presents no federal question, the Copyright Act still preempts the Plaintiff's claims. Generally, federal preemption is a defense to a plaintiff's claims which "does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court." Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987). However, "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." Id. at 63-64. Copyright claims are one such select group. See Rosciszewski v. Arete Assoc., Inc., 1 F.3d 225, 232 (4th Cir. 1993). "[A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright . . . are governed exclusively by this title." 17 U.S.C. § 301(a).

Thus, the Copyright Act would preempt these claims, even though the Plaintiff has pled no federal claims, if the subject software is within the scope of the Copyright Act and the rights granted under state law are equivalent to the rights granted by federal copyright law. See Rosciszewski, 1 F.3d at 229. To determine whether the state and federal rights are equivalent, courts apply the "extra

7

element" test. Id. at 229-30. This test has been described as follows:

> if an extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action, . . . there is no preemption, . . . provided that the extra element changes the nature of the action so that it is *qualitatively* different from a copyright infringement claim.

Id. (quotations and citations omitted). In addition:

> [A] right which is equivalent to copyright is one which is infringed by the mere act of reproduction, performance, distribution or display . . . If under state law the act of reproduction, performance, distribution or display, . . . will *in itself* infringe the state created right, then such right is preempted. *But if other elements are required, in addition to or instead of, the acts of reproduction, performance, distribution or display,* in order to constitute a state created cause of action, then the right does not lie within the general scope of copyright, and there is no preemption.

Collezione Europa U.S.A., Inc. v. Hillsdale House, Ltd., 243 F. Supp. 2d 444, 449 (M.D.N.C. 2003) (internal quotations and citations omitted) (emphasis in original).

The parties do not dispute that the software at issue is within the subject matter of copyright – making the central issue whether there is an "extra element" to the Plaintiff's claims which prevents preemption. The Fourth Circuit has found this "extra element" in a breach of contract claim which was originally held preempted by the district court. See Acorn Structures, Inc. v. Swantz, 846 F.2d 923, 925-26 (4th Cir. 1988). In Acorn Structures, the plaintiff created house design plans for the defendant on the contractual provision that if the defendant chose to build the designed home he either had to purchase the plans or purchase all of his building materials from the plaintiff. Id. at 926. However, the defendant built the home without fulfilling either of the contractual requirements. Id. The Fourth Circuit held that the plaintiff's "cause of action is based upon this implicit provision of the contract which does not arise out of the subject matter of copyright and is therefore a separate and distinct cause of action." Id.

As in Acorn Structures, the underlying dispute here is contractual in nature – the question

8

being whether the Plaintiff owes the Defendant additional right-to-use fees for its use of the subject software. The issue to be decided by the state court is essentially whether the Plaintiff's use of the peripheral devices implicated the terms of the 1999 Agreement which require it to pay additional right-to-use fees, and if so, in what amount. Or, as the Plaintiff frames it, the issue for the state court is whether the use of the software associated with the peripheral devices purchased from third parties was permitted by contractual provisions authorizing the use of software in conjunction with the use of the switch. The fact that the software is subject to the protection of the Copyright Act does not change the underlying nature of these contractual claims, the extra element here being use of the software *without paying the right-to-use fees as required by the contract*.

Further, where, there are contractual provisions which control the rights of the parties for unauthorized use of the software, "essentially granting permission for the excess use and then requiring payment for it," then the "licensee's alleged conduct constitutes a breach of a covenant and the covenant is an enforceable contractual obligation" making "the licensor's sole remedy [an action] for breach of contract." Madison River Mgmt. Co. v. Business Mgmt. Software Corp., 387 F. Supp. 2d 521, 533-34 (M.D.N.C. 2005). The 1999 Agreement, which remains in effect, provided the terms should non-licensed use of the software occur. The Defendant argues that this section of the contract "is simply a safety provision that makes clear that if Nortel discovers violations of the agreement on its own *despite* U.S. South's obligations to seek and pay for authorization to use software before it does so, Nortel has the right to invoice U.S. South for using software without a license." Truly, it is a safety provision – a contractual term – of which the Defendant seeks to take advantage, having already invoiced the Plaintiff for over $2 million.

Finally, the Defendant argues that in a declaratory judgment action, it is not the character of the Plaintiff's claim, but the character of the Defendant's threatened action that this Court should

consider. The Defendant asserts in support of this argument that had the Plaintiff not filed its action first, it would have filed an action for Copyright infringement in federal court.

It is true that "[w]hether a state action for a declaratory judgment is removable to federal court is determined by reference to the character of the threatened action." Hunter Douglas Inc. v. Sheet Metal Workers Int'l Ass'n, Local 159, 714 F.2d 342, 345 (4th Cir. 1983). However, the "well-pleaded complaint rule operates no differently when the jurisdictional issue is whether a district court possesses subject matter jurisdiction of a declaratory judgment action purporting to raise a federal question." Columbia Gas, 237 F.3d at 370. Thus, "the proper jurisdictional question is whether the complaint alleges a claim arising under federal law that the declaratory judgment defendant could affirmatively bring against the declaratory judgment plaintiff." Id. As discussed above, the answer to this question is no. Even if the Defendant had filed this action first in federal court, this Court would not have subject matter jurisdiction. The dispute is whether right-to-use fees are owed under the 1999 Agreement – not whether the Defendant's copyright was infringed. There is an extra element to this claim, contractual in nature, which is not equivalent to the rights granted by federal copyright law.

Accordingly, the Plaintiff's "Motion to Remand" must be granted, and this matter shall be remanded to state court.[4]

### III. ORDER

**NOW, THEREFORE, IT IS ORDERED:**

1. The Plaintiff's "Motion to Remand" (document #8) is **GRANTED**; that is, this action

---

[4] In its "Reply . . ." memorandum, the Plaintiff seeks an award of costs, expenses, and attorneys' fees because of the "insubstantiality and meritless position advanced by Defendant." Although the Court has not adopted the Defendant's position, because its complex arguments could not be characterized as frivolous, an award of costs, expenses, and fees would not be proper in this case.

(including the issue whether the Superior Court's Temporary Restraining Order should remain in effect and the Defendant's pending "Motion . . . to Dismiss Counts 1, 3, 5, and 6 of the Complaint"), is **REMANDED** to the Superior Court for the County of Mecklenburg.

2. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties, <u>and to the Honorable Robert J. Conrad, Jr.</u>

**SO ORDERED.**

Signed: July 9, 2007

*Carl Horn, III*

Carl Horn, III
United States Magistrate Judge